765 P.2d 992

**STATE of Arizona, Appellee,**

v.

**Galen Lee ADAMS, Sr., Appellant.**

**No. CR–87–0344–PR.**

Supreme Court of Arizona,
En Banc.

Dec. 6, 1988.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, John B. Barkley, Asst. Attys. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

FELDMAN, Vice Chief Justice.

In *State v. Phillips,* 152 Ariz. 533, 535, 733 P.2d 1116, 1118 (1987), we held that a criminal defendant must know the amount of restitution he will be required to pay before the court accepts his plea bargain. *See also State v. Crowder,* 155 Ariz. 477,

479, 747 P.2d 1176, 1178 (1987) (clarifying *Phillips*); *State v. Lukens*, 151 Ariz. 502, 729 P.2d 306 (1986). We granted review to determine whether this rule applies retroactively to cases pending on direct review when we decided *Phillips*. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031 and –4033.

## FACTS

A Maricopa County grand jury indicted Galen Lee Adams (defendant) for second degree trafficking in stolen property under A.R.S. § 13–2307(A) and (C), and two counts of second degree burglary under A.R.S. § 13–1507. These crimes are class 3 felonies. In addition, the state alleged that defendant had prior felony convictions for forgery and burglary and that defendant committed the crimes while on parole. If proved, these crimes would have significantly enhanced defendant's sentence. *See* A.R.S. § 13–604.02(A).

In December 1986, defendant agreed at the pretrial conference to plead guilty to the trafficking offense and admitted one prior forgery conviction. He also acknowledged that the court could impose a fine not to exceed $150,000. Finally, the agreement stated that defendant "will make any required restitution...." Plea Agreement, filed Dec. 10, 1986. The state agreed to dismiss the two burglary counts and all other enhancement allegations.

Defendant subsequently appeared for sentencing. Because of defendant's extensive criminal record, the court imposed a fifteen-year sentence. Reporter's Transcript, Jan. 28, 1987, at 7. In addition, the court required defendant to make restitution of $100 to the law enforcement agency for "buy money" that an undercover officer gave defendant.

Defendant timely appealed, seeking to withdraw from his plea agreement and argued its invalidity because the trial judge did not inform him of the specific amount of restitution. Defendant necessarily asserted that our decisions in *Phillips* and *Lukens* have retroactive effect.

Although the court of appeals noted that *Phillips* controlled on the merits of defend-

ant's argument, it nevertheless concluded that *Phillips* was not retroactive. *State v. Adams*, 156 Ariz. 88, 89, 750 P.2d 31, 32 (Ct.App.1987). We disagree.

## DISCUSSION

### A. Retroactivity of the *Phillips/Lukens* Rule

The court of appeals cited authority favoring both prospective and retrospective application of new standards. *Adams*, 156 Ariz. at 91, 750 P.2d at 34. The court recognized, however, that the "latest word" is *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). *Adams*, 156 Ariz. at 89, 750 P.2d at 32.

In *Griffith*, the United States Supreme Court addressed the retrospective application of the "new rule" from *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (black defendant can establish equal protection violation by showing peremptory challenges eliminate black jurors), *partially overruling Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1964). *Griffith*, 479 U.S. at 316, 107 S.Ct. at 710. The *Griffith* majority adopted Justice Harlan's views, stating that "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication." *Griffith*, 479 U.S. at 322, 107 S.Ct. at 713. Further, " 'fishing one case from the stream of appellate review, using it as a vehicle for pronouncing new constitutional standards, and then permitting a stream of similar cases subsequently to flow by unaffected by that new rule' " constitutes a departure from proper judicial standards. *Id.* at 323, 107 S.Ct. at 713 (quoting *Williams v. United States*, 401 U.S. 675, 679, 91 S.Ct. 1171, 1173, 28 L.Ed.2d 388 (1971), *companion to Mackey v. United States*, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971)), (Harlan, J., concurring and dissenting opinion).

*Griffith* also noted that failure to apply new rules to all cases pending on direct review causes inequity, allowing courts to elect " 'which of many similarly situated defendants should be the chance benefi-

ciary.' " *Griffith,* 479 U.S. at 323, 107 S.Ct. at 714 (quoting *United States v. Johnson,* 457 U.S. 537, 555–56 n. 16, 102 S.Ct. 2579, 2590 n. 16, 73 L.Ed.2d 202 (1982)).

Our court of appeals, however, believed that *Griffith's* principles of retroactivity only applied to federal jurisprudence. Consequently, those principles do not bind a state unless it deals with federal jurisprudence. *Adams,* 156 Ariz. at 89, 750 P.2d at 32. Believing that *Phillips* only dealt with state law, our court of appeals adopted *Griffith's* minority position and reasoned that in matters involving a "clear break" with prior law, the court should determine retroactivity with a three-part test. *Adams,* 156 Ariz. at 90, 750 P.2d at 33 (court to consider (a) the new standard's purpose, (b) reliance on the old standard, and (c) effect of retroactive application). Applying this test, the court concluded that *Phillips* only applied prospectively.

Assuming, *arguendo,* the court of appeals correctly held that *Griffith* only creates a rule applicable to federal issues, *Griffith* still applies here. *Phillips* defines a right under the fourteenth amendment to the United States Constitution. Because a guilty plea waives constitutionally protected rights, a defendant must thoroughly understand its consequences. *Phillips,* 152 Ariz. at 535, 733 P.2d at 1118 (citing *State v. Cutler,* 121 Ariz. 328, 329, 590 P.2d 444, 445 (1979)); *see also McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969) (valid waiver/plea under due process clause must be a knowing abandonment of rights). Thus, the present case is directly within *Griffith's* ambit.

The constitutional issue distinguishes this case from *People v. Erickson,* 117 Ill.2d 271, 111 Ill.Dec. 924, 513 N.E.2d 367 (1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988), which guided our court of appeals. *See Adams,* 156 Ariz. at 89, 750 P.2d at 32. *Erickson* dealt with the retroactivity of a rule allowing a sentencing jury. There, the Illinois Supreme Court held that the right to a sentencing jury is statutory, not constitutional.

*Id.* 117 Ill.2d at 287–289, 111 Ill.Dec. at 931, 513 N.E.2d at 374 (citing *Spaziano v. Florida,* 468 U.S. 447, 464, 104 S.Ct. 3154, 3165, 82 L.Ed.2d 340 (1984)). Consequently, the Illinois court held *Griffith's* mandate on retroactivity inapplicable. The fourteenth amendment makes the difference here.

Finally, this case requires retroactive application of *Phillips* even if no federal issue existed. The court of appeals noted that no constitutional principle requires retrospective application of a *new* criminal procedure. 156 Ariz. at 90, 750 P.2d at 33, *citing State v. Gerlaugh,* 144 Ariz. 449, 698 P.2d 694 (1985). *Phillips* and *Lukens,* however, do not create a new rule. The underlying theory of both cases is that a valid plea is one made knowingly and intelligently. *Phillips,* 152 Ariz. at 535, 733 P.2d at 1118; *Lukens,* 151 Ariz. at 505, 729 P.2d at 309. This is hardly a novel principle. *See, e.g., Cutler,* 121 Ariz. at 329, 590 P.2d at 445. *Phillips* and *Lukens* simply state that a defendant cannot "thoroughly understand" an agreement that requires restitution but that does not specify the amount of restitution. *Phillips,* 152 Ariz. at 535, 733 P.2d at 1118.

Thus, *Phillips* was no "clear break" with the past. We overturned no settled law, overruled no case, departed from no recognized principle. We merely applied a settled rule to different facts. With no clear break in precedent, the scales tip in favor of retroactivity and equal treatment for all similarly situated defendants under both *Griffith's* majority and minority view. *See generally Griffith,* 479 U.S. at 324–28, 107 S.Ct. at 714–16 (discussing the "clear break" exception); *id.* at 333, 107 S.Ct. at 719 (White, J., dissenting).

This lack of a "clear break" with past law distinguishes this case from *Gerlaugh,* upon which our court of appeals relied. In *Gerlaugh,* we decided whether to retroactively apply the new ineffective assistance of counsel standard from *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Nash,* 143 Ariz. 392, 694 P.2d 222 (1985), *cert. denied,* 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985). We dealt with an actu-

al break with the past and a "newly modified standard" and did not apply it retroactively. *Gerlaugh*, 144 Ariz. at 456, 698 P.2d at 701. *Gerlaugh*'s application of a new standard distinguishes that case from *Phillips*'s application of an old standard to new facts. We hold, therefore, that *Phillips* applies retroactively, but only, of course, to cases not final at the time we decided it.

### B. Application

■ Having concluded that *Phillips* and *Lukens* are retroactive, we now apply them to defendant's appeal. Retroactive application does not help defendant here because *Phillips* does not permit defendant to withdraw his plea. In *Crowder*, we re-examined *Phillips* and stated that courts should allow withdrawal from plea bargains only when "the deal was not voluntary because defendant lacked information of true importance...." *Crowder*, 155 Ariz. at 482, 747 P.2d at 1181. First we determine whether a defendant knowingly agreed to restitution based on the whole record—"what [defendant] knew from any source." *Id.* at 479, 747 P.2d at 1178. *See also State v. King*, 157 Ariz. 508, 759 P.2d 1312 (1988) (inference that defendant knew of possible restitution amount from written agreement and defense counsel's explanation). Second, we determine whether restitution was relevant to defendant's decision to plead. *Phillips*, 152 Ariz. at 480, 747 P.2d at 1180. Only when a defendant truly did not know the restitution amount and when restitution was relevant to his decision does *Phillips/Lukens* apply.[1]

Here, *Phillips/Lukens* prevent this defendant from withdrawing from his advantageous plea agreement. The presentence report indicated that one of defendant's alleged victims had a right to $965 in restitution. This was on a burglary count that the prosecution dismissed under the plea agreement. The report also indicated that another victim did not request restitution but could have. Finally, defendant knew he received $100 in "buy money" from an undercover police officer. With these claims against him, defendant must have known that $100 in "buy money" was the minimum amount he would pay.

Indeed, the amount of restitution is insignificant here. In *State v. Grijalba*, 157 Ariz. 112, 115, 755 P.2d 417, 420 (1988), we held as a matter of law that a $78 restitution payment must have been irrelevant given the serious charges. Here, defendant's plea bargain saved him from serving approximately fifteen extra years in prison. Surely defendant would not risk adding prison time to save a $100 restitution payment that, in any event, is not due for some time. In anyone's view, the $100 sum defendant must pay to obtain the advantageous plea bargain is the best money this defendant will ever spend. Consequently, we hold as a matter of law that the restitutionary amount was irrelevant to defendant's decision to plead.

Therefore, defendant will receive no relief from us. We affirm the trial court's sentence and vacate the court of appeals' opinion.

GORDON, C.J., and HOLOHAN, J., concur.

MOELLER, Justice, specially concurring.

I concur in the result reached by the majority because it is clear in this case, as it has been in all the cases spawned by the new *Phillips–Lukens* rule, that the plea agreement's lack of specificity relative to restitution has nothing to do with the vol-

---

1. We held also in *Crowder* that defendant could not raise the issues of voluntariness and relevance for the first time on appeal. Here, Adams raised these issues for the first time on appeal. We decide these issues now only because the court of appeals, which wrote its opinion before *Crowder*, dealt with the issues. We do not, however, depart from *Crowder*. Defendant must raise the issues in the trial court before he can raise them on appeal.

Also, we decided *Lukens* on November 20, 1986, and Adams entered his plea on December 10, 1986. Further, the trial judge sentenced Adams after *Lukens'* mandate. Arguably, Adams waived the issues he now presents by failing to raise the matters to the trial judge. We do not deal with that question because the court of appeals did not. We do not intimate, however, that the doctrine of waiver is inapplicable to the restitution issue.

untariness of the plea. Thus, I agree that the defendant is not entitled to withdraw from his plea. However, I disagree with several other aspects of the majority opinion.

I have previously expressed the view that the *Phillips–Lukens* rule is both unnecessary and unwise. *See State v. Crowder*, 155 Ariz. 477, 482, 747 P.2d 1176, 1181 (1987) (Moeller, J., concurring in part, dissenting in part). At the time, I believed *Phillips* represented, at most, either a new interpretation of an existing state rule of criminal procedure or the promulgation of a new state rule of criminal procedure. Although some of the language in *Phillips* and *Lukens* hints that the new rule has a constitutional basis, the instant case is the first time the court has undertaken to accord full-blown constitutional status to the new rule. This buttressing of the basis for the rule requires that I restate my objections, because I can find nothing in the due process clause to justify this new rule. No other state agrees with the majority that a *Phillips* rule is mandated by the due process clause of the federal constitution. Many have rejected such a suggestion, either expressly or by implication. *See, e.g., Humber v. State*, 481 So.2d 452, 454 (Ala. Crim.App.1985); *State v. Kennedy*, 327 N.W.2d 3, 5 (Minn.1982).

Moreover, federal courts clearly do not adhere to the proposition that a *Phillips* rule is mandated by the due process clause. This is no more evident than in the 1985 amendment to Rule 11(c)(1) of the Federal Rules of Criminal Procedure, which provides in relevant part:

> *Advice to Defendant.* Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:
>
> (1) ... When applicable, that the Court may also order him to make restitution to any victim of the offense.

The advisory comment to this amendment explicitly states that neither an exact amount nor an outer limit of restitution need be stated to the defendant:

> \* \* \* \* \* \*

> Because [this legislation] contemplates that the amount of the restitution to be ordered will be ascertained later in the sentencing process, this amendment to Rule 11(c)(1) merely requires that the defendant be told of the Court's power to order restitution. The exact amount or upper limit cannot and need not be stated at the time of the plea.

Fed.R.Crim.P. 11(c)(1) advisory committee's note. This comment was cited with approval in *United States v. Pomazi*, 851 F.2d 244, 248–49 (4th Cir.1988) (failure to advise defendant at plea proceedings of possible restitution order deemed harmless in light of larger potential maximum fine); *see also United States v. Fentress*, 792 F.2d 461 (4th Cir.1986) (omission of a restitution warning was a variance that did not affect substantial rights and must be disregarded as harmless error).

The majority supports its argument that *Phillips* is constitutionally required by stating: "*Phillips* defines a right under the fourteenth amendment to the United States Constitution. Because a guilty plea waives constitutionally protected rights a defendant must thoroughly understand the rights that he is waiving." I agree that a guilty plea waives constitutional rights and that a defendant must thoroughly understand the constitutional rights he is waiving. It does not follow that a defendant has a constitutional right to have the amount of restitution set forth in the plea agreement.

The majority cites *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) as support for its assertion that the *Phillips* rule has a constitutional basis. McCarthy sought to have his guilty plea set aside claiming the trial court did not comply with Rule 11 of the Federal Rules of Criminal Procedure. *McCarthy* is expressly limited to an interpretation of Rule 11. Although *McCarthy* does note that constitutional rights can only be validly waived if the waiver is voluntarily and knowingly made, the case involves no issue of restitution and provides no constitutional support for a *Phillips* rule.

Finally, I disagree with the majority's conclusion that *Phillips* did not create a

new rule, but "merely applied a settled rule to different facts." At 170, 765 P.2d at 994. This statement will come as a great surprise to the trial judges, prosecutors, and defense attorneys of Arizona, who had routinely participated in plea agreements which almost invariably did not comply with *Phillips.* The statement of the court of appeals in this case is entirely accurate:

> Suffice it to say that until *Phillips,* plea agreements seldom, if ever, stated the amount of restitution. Trial courts consistently accepted pleas without specific amounts of restitution and thereafter, at the time of sentencing, ordered the defendant to pay a specific amount. In fact, the amount or range of restitution is often unknown until a pre-sentence investigation has been conducted, a procedure which does not occur until after a plea is entered.

*Adams,* 156 Ariz. at 91, 750 P.2d at 34 (Ct.App.1988).

No pre-*Phillips* case has yet arisen in which a trial judge, a prosecutor, a defense counsel, or a defendant objected to a plea proceeding on the basis that it did not comply with what is now known as the *Phillips* rule. This is eloquent testimony that *Phillips* represents a departure from established practice. This court itself, contrary to its present assertion, has earlier recognized that there was a "change in law wrought by *Phillips." State v. Crowder,* 155 Ariz. at 479, 747 P.2d at 1178 (1987). In my view, the court of appeals correctly concluded that *Phillips–Lukens* was a new rule. As a new rule, it was entirely appropriate for the court to limit its application to a prospective-only basis.

Thus, the majority and I arrive at the same conclusion: the defendant cannot withdraw from his plea agreement. For the reasons stated, however, I respectfully dissent from the reasoning by which the majority arrives at our common conclusion.

CAMERON, J., agrees with the special concurrence of MOELLER, J.